W. E. DARDEN v. STATE.

No. A-6200.   Opinion Filed Feb. 2. 1929.
(273 Pac. 1027.)

Gaylord R. Wilcox, for plaintiff in error.

George F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. The plaintiff in error, hereinafter called defendant, was convicted in the superior court of Creek county of manslaughter in the first degree, and his punishment fixed at a term of eight years in the state penitentiary.

Briefly stated, the record discloses a state of facts about as follows: Defendant was a traveling salesman, had been married, but just before the homicide his wife had procured a divorce. She resided at the town of Shamrock. He resided at Shawnee, but received his mail at Shamrock. The deceased, Glenn Starr, a married man, oil field worker, resided at the town of Shamrock. It appears that defendant was extremely jealous of Starr, which jealousy began prior to the divorce of defendant's wife, and that the homicide grew out of this fact. On one occasion, a few days prior to the homicide, Starr and the defendant had some words in reference to defendant's wife, and there is evidence of threats made by both the defendant and the deceased toward each other. The homicide occurred late in the afternoon; at the time defendant was standing at the entrance of a stairway near the Keller drug store, when Starr passed, and the evidence is that defendant fired the first shot, which passed entirely though the body of Starr and wounded a small girl on the sidewalk nearby. Starr then fired at defendant, and wounded him in the arm. Starr died the following day. Defendant testified, and the evidence of his divorced wife corroborated him, that a few minutes before the homicide he was told of threats made by Starr toward him. He also testified that at the time he fired Starr was reaching his hand back as if

to draw a weapon, and that he then fired; that Starr then shot him in the arm, and struck him over the head with a pistol. The weight of the evidence and the credibility of the witnesses being for the jury, the evidence is sufficient to sustain the judgment.

Two principal propositions are urged for a reversal of the judgment: First, it is contended that the court committed prejudicial error in failing to fully define manslaughter in the first degree. The only crimes submitted to the jury are murder and manslaughter in the first degree. The court's charge is rather voluminous, consisting of 24 instructions, in addition to the preliminary statement of the case. None of these charges give a clear-cut definition of murder, nor of manslaughter in the first degree. Both are defined by statute; murder by section 1733, and manslaughter in the first degree by section 1740, Comp. St. 1921, as follows:

"Homicide is manslaughter in the first degree in the following cases: First. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor. Second. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide. Third. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

The only instruction which even squints at a definition of manslaughter in the first degree is instruction No. 21, which in part reads:

"* * * You are therefore instructed that if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant W. E. Darden, did on or about the 26th of March, 1925, in the county of Creek, and state of Oklahoma, then and there being, did then and there willfully and feloniously make an assault upon the

said Glenn Starr with said revolver, and with which said revolver, the said W. E. Darden did shoot the said Glenn Starr, but without any intention of killing or inflicting serious bodily injury upon the deceased, then it will be your duty to find the defendant guilty of manslaughter in the first degree.

"On the other hand, if, after a careful consideration of all the evidence in this case, there remains in your minds a reasonable doubt as to the existence of any material fact necessary to constitute the crime of manslaughter as defined to you in these instructions, or to constitute the crime of manslaughter as herein defined, then it will be your duty to resolve all such doubt in favor of the defendant and acquit him."

This is not sufficiently definite. It omits elements of manslaughter in the first degree as defined by section 1740, Comp. St. 1921, under each of its subdivisions. It has been uniformly held by this court that it is the duty of the trial court to instruct the jury the law of the case on trial, which instruction should include a definition of the offense sufficient to inform the jury what facts must be established by the proof in order to justify a verdict of guilty. Brock v. State, 6 Okla. Cr. 23, 115 P. 1026; Wilkerson v. State, 37 Okla. Cr. 43, 256 P. 63; Smith v. State, 40 Okla. Cr. 152, 267 P. 682.

The instruction defining the offense, or stating the facts necessary to be proven to warrant a verdict of guilty, need not be in the language of the statute; but words of similar import may be used, and it is not necessary that it should be in its entirety in one instruction.

The only other proposition argued is that the trial court erred in admitting incompetent evidence. This contention is directed to various items of evidence introduced by the state. The state was permitted to prove a statement claimed to have been made by D. A. Miner, a witness for the state, to Dr. Starr, a brother of deceased. This was apparently offered on the theory that the witness was

unfriendly and had made statements different from his, testimony. No predicate, however, was laid by the state for the impeaching questions. On the contrary, the record indicates that the counsel for the state was fully aware what the testimony of the witness would be before he was called to testify. It is well settled that, where a party is entrapped or deceived into placing a hostile witness on the stand, who then testifies contrary to the statements made, and to the belief of the party calling him, he may be impeached by the party calling him. On the other hand, a witness cannot be called to the stand, by a party knowing what his testimony will be, and then be impeached by showing he has made contrary statements. Evidence to prove a substantive fact cannot be introduced by a purely hearsay statement under the guise of impeaching a witness. Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57; Culpepper v. State, 4 Okla. Cr. 103, 111 P. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668; Paris v. U. S, 5 Okla. Cr. 601, 115 P. 373; 2 Wigmore on Ev. § 904, subd. 8.

There are several other instances in the record where witnesses for the state were permitted, over the objection of defendant, to testify to matters which are purely hearsay. It is unnecessary to recite the several instances pointed out in the brief. The evidence of guilt in a case might be so overwhelming, or the undisputed facts so convincing, that the court could say that items of hearsay evidence were harmless; but where the issue is sharply drawn, and hearsay evidence, which tends to arouse the prejudice or to warp the judgment of the jury, is admitted, and which may have affected the verdict, it cannot be considered harmless. Ward v. State, 17 Okla. Cr. 713, 188 P. 894; Cook et al. v. State, 27 Okla. Cr. 215, 226 P. 595.

The case is reversed and remanded.

DAVENPORT and CHAPPELL, JJ., concur.