## OTTO WIESE et al. v. STATE.

No. A-7200.   Opinion Filed April 5, 1930.
(287 Pac. 1099.)

Roberson & Roberson, for plaintiffs in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiffs in error, hereinafter referred to as the defendants, were jointly charged with Rudolph Wiese, with maintaining a public nuisance, and were jointly tried; Otto Wiese, Emil Wiese, and Leo Wiese were convicted and each sentenced to pay a fine of $200 and costs, and to be imprisoned in the county jail for

sixty days. From which sentence and judgment defendants have appealed to this court.

The testimony on behalf of the state tends to show that the defendants were farmers living in Canadian county, about ten miles from El Reno; the defendants were in the habit of having play parties and a dance occasionally at their country home. The state called H. H. Frank who testified he was acquainted with the defendants; that he had known them for about two years; that he testified at an inquiry held at the courthouse on the 20th day of September, 1927; the statement that he had testified at the courthouse was objected to by the defendants. The record does not show any ruling by the court. Witness testified he had been at defendants' home a hundred times or more within the past two years; he did not remember any of the dates when he was there. Witness was then asked if he had ever seen intoxicating liquor at the defendants' house; the court overruled the defendants' objection, and defendants excepted. The witness then answered: "I have. I have been at the house both day and night." Witness then pointed out by name the defendants he had seen at their home; "I have not seen intoxicating liquor at defendants' home many times." Witness was again asked with reference to the statement he should have made some time in September, 1927, and defendants objected to it. The record is full of questions by the county attorney as to the statement which should have been made by the witness Frank in September, 1927; all of which were objected to by the defendants as incompetent, irrelevant, and immaterial. The objections were overruled, and they saved an exception.

Witness further stated that he did not remember he had ever seen any one intoxicated at defendants' home. He was asked by the county attorney, "Did you testify

that way at the inquiry?" And witness answered, "I don't know whether I did or not." Witness further stated he had not talked to the Wiese boys since that time. "I have never talked to them about this case." Several pages of the record are taken up by the county attorney asking the witness with reference to the inquiry held some time in September, 1927, but the record does not disclose what kind of an inquiry it was, except it does disclose the witness was under oath. We do not deem it necessary to set out in this opinion the questions in full propounded. The record discloses that the witness testified at an inquiry of some kind in September, 1927, and witness made an affidavit or testified to some fact with reference to a case of some kind or hearing, the character of which is not disclosed. All of the testimony of the witness seems to be in reply to questions asked by the county attorney, in which he stated, "I don't know I said that," or "not that I remember." Often his answer is, "I don't remember that they did that," and "I have never seen any of them having anything like a drinking party."

On cross-examination witness was asked if his statement he was making to the jury and the court today was true, and he answered, "The best I remember they are."

The county attorney then, over the objection of the defendants, offered in evidence an affidavit, claimed to have been sworn to by the witness H. H. Frank, on the 20th day of September, 1927, which was admitted and read to the jury. The affidavit, as disclosed by the record, is in the nature of questions and answers, the heading of which states it was taken in the office of the county attorney, on the 20th day of September, 1927.

The record discloses that when the county attorney offered the affidavit of his witness Huel H. Frank, claimed to have been taken on the 20th day of September, 1927,

he stated to the court he offered the affidavit for the purpose of impeaching the witness Frank. After this affidavit was introduced the record shows that, in the absence of the jury, the witness Frank was taken into custody by the officer and placed in jail, there to await the filing of some kind of a charge against him, and that later on, after the witness had been in jail several hours, and after the defendants' testimony was all in, the county attorney asked permission of the court to reopen the case for the reason that Huel H. Frank, who was the first witness for the state, on the previous day, had requested that he be permitted to take the stand and testify in the case in chief; that was objected to by the defendants, overruled by the court, and defendants excepted.

When Frank was called to the stand, the county attorney again went into his testimony, and his statements were entirely different from the testimony he had given in chief, and attempted to testify that the defendants had suggested to him, and asked him to not say anything much about them; witness' statements were completely changed from the testimony given when he was first called as a witness in the case. The witness stated Otto Wiese had spent the night with him Saturday night before the trial began on Monday, and that the defendants told him, if he got into trouble, they would help him out, and told him, when he was asked questions, to tell he had forgotten or did not remember.

Witness further testified that he had been to parties at the home of the defendants within the past three years; boys and girls both attended these parties; and that he had seen intoxicating liquor at these parties; that he had seen persons at these dances under the influence of intoxicating liquor, and the conduct of some of the girls was not very good.

The court then asked the witness if he had ever been mistreated by the officers, and answered, "No, sir; I have not." This was objected to by the defendants, the objection overruled, and the defendants excepted.

On cross-examination witness stated he had only seen his mother and father and they talked to him about changing his statement, and they told him they wanted him to tell the truth; that he had talked to a fellow by the name of Hutchins there in the jail, "and he told me I had myself in an awful shape." Witness then stated he had looked at the paper in the office of Mr. Jennings, who "asked me if I knew, if I could remember what I told in the paper. I am now trying to tell the truth; I don't know that I am afraid of being prosecuted, if I let my statement made yesterday stand, nor do I know I will not be prosecuted."

The three defendants were then called and contradicted the statement of the witness Frank as to having talked to him about the case, or in any way trying to influence his testimony. One other witness was called who testified to seeing intoxicating liquor and to buying a pint of intoxicating liquor from one of the defendants at their home when there was a party going on. Another witness testified to seeing one of the girls do an indecent dance by raising all her clothes up under her arms and exposing her person. Another testified to seeing Luster Smith and Freeda Wiese, or Haynes, in a room on a bed in the act of cohabitation. Several witnesses who attended the parties testified for the defendants, testifying positively they had never seen the defendants sell any whisky or in any way whatever furnish the same to others.

Luster Smith testified he had been to the defendants' place often, and that he had never seen the defendants offer

any whisky for sale; that he had a farm about a mile from their farm; that he did not know how many visits he had made to defendants' place; that he never saw any misconduct on the part of any of the girls; that he knew Freeda Wiese, or Haynes, and that he had never been on the bed with her at any time at the defendants' home or any other place.

Freeda Wiese testified and stated she had never had sexual intercourse with Luster Smith; that she had never been on the bed with him, nor had he ever been on top of her on the bed. Opal Ross and several other witnesses denied the statement that she had ever pulled her clothes up and exposed her person and danced in the room where other parties were. Several witnesses testify to having attended the parties and dances, and stated there was about the same order there as at the other dances conducted at other places.

The testimony of the officers called as witnesses for the state is that on one occasion they found some whisky in the section line a short distance from where the defendants lived; they found some jugs and bottles that had an odor like whisky in them, and one time they found about a half pint of whisky in one of the jars, but the officer stated it was not a sufficient amount to justify them in making an arrest.

The testimony shows that these three defendants were farming a large tract of land; that they had two sisters living with them, one stayed all the time and supervised and looked after the housework; that young men and young women called often and they would have a play party, and on one or two occasions the testimony shows they had a dance. The testimony further shows that O. R. Shulor's actions were such that it became necessary

at one time for the defendants to take him from the room where he was dancing, and he got mad, and they had to invite him to leave.

The testimony of H. H. Frank is contradictory and is not corroborated by any other witness. Some of the state witnesses attempt to show that when they had these parties they never saw the defendants sell any whisky or dispose of it in any way. The inquiry of the state was extended over a period of three years.

We have referred to all the testimony we deem necessary to refer to. The defendants have assigned several errors alleged to have been committed by the court in the trial of their case. We will first consider the fourth and seventh assignments, which are as follows:

"4. The court erred in admitting incompetent, irrelevant, immaterial and prejudicial testimony offered on the part of the state to go to the jury over the objections and exceptions of the defendants."

"7. The court erred in permitting the state to impeach the testimony of its witness Huel H. Frank."

In the record Huel H. Frank is spoken of in several places as H. H. Frank. The defendant insists that the court erred in permitting the county attorney, over their objections, to attempt to impeach the testimony of the state's witness Huel H. Frank, by reading to the jury an affidavit or statement claimed to have been made by the witness, on the 20th day of September, 1927, in the office of the county attorney. There is nothing in the record to show what kind of a hearing was being held when the affidavit of Frank was taken, nor for what purpose the affidavit was taken, and the record fails to show that either of the defendants was present at the hearing or knew anything about it, and they insist that their rights were prejudiced by reason of the court's action in permitting the

state to read to the jury the statement of the winess Frank. When this affidavit or statement was offered by the state the county attorney stated to the court that he offered the same for the purpose of impeaching his witness Huel H. Frank. No showing is made that the county attorney was taken by surprise in the testimony of the witness Frank when he testified in the trial of this case, nor is there any reason why the state should be permitted to attempt to impeach its witness. A careful reading of the testimony of the witness Frank shows that he did not testify in the trial of the case anything detrimental to the state, but simply failed to testify hurtfully or prejudicially to the defendants on trial.

It is clear from the examination of the witness Frank by the county attorney that he was not testifying satisfactorily to the county attorney, and that the county attorney was predicating his questions propounded to the witness upon some statement or affidavit in his possession. The defendants urge that the mere fact that a witness does not testify as the party expected him to do will not afford any ground for the introduction of any evidence of previous contradictory statements made by such witness, and that, when contradictory statements made by a witness are in evidence for the purpose of impeaching the witness, they must be found to contradict the testimony of the witness which was injurious to the party seeking to impeach him, and in such case it is the duty of the court to clearly inform the jury that such statements cannot be considered as independent substantive evidence against or in favor of the defendants, and that the contradictory statements can only be considered by the jury for the purpose of affecting the credibility of the witness, and to consider it for any other purpose would be in violation of the law protecting the rights of the person charged.

In this case the record shows that when the statement of the witness Frank was presented and read to the jury, over the objections of the defendants, the entire statement was read and incorporated in the record.

The question to be determined is, Was the introduction of this statement claimed to have been sworn to on the 20th day of September, 1927, proper? When a party voluntarily calls a witness in proof of his case, he thereby represents him to be worthy of belief; they are presumed to know the character of the witness they produce and facts to which they would testify, and, having thus presented them, the law will not permit the party afterwards to impeach them. All of the earlier decisions are to this effect. The rule on this question has been somewhat modified; however, a party cannot impeach his own witness by proving his bad character for truth, because this is something a party can and should inform himself about before calling a witness to testify. However, where a witness makes a statement to a party which would be beneficial to the party and the party having reasonable grounds to believe that the testimony of the witness would be in substance the same as the statement made, and the witness is called and placed upon the stand, and, instead of swearing to the statements made to the party, testifies to matters which are injurious to the party calling him, it would be a manifest injustice to say that the party so surprised, deceived, and imposed upon should be bound by such testimony. Under these conditions a party, on the ground of surprise from the testimony given, should in the discretion of the trial court be permitted to offer evidence of previous statements of such witness which contradicts the injurious portions of his testimony. This rule would seem to be necessary for the protection of litigants against the designs of artful witnesses. If the witness deceives the party calling him,

it would be unjust to hold the party to be bound by the deception. But this rule is subject to certain conditions: First a party must be surprised at the testimony of the witness sought to be impeached, and this surprise must be based upon such facts that would give the party reasonable grounds to believe that the witness would testify favorably to the party. If the facts were such that the party had no reasonable grounds to believe, when he placed the witness on the stand, that the witness would so testify, then he could not impeach his witness or claim surprise, as the failure of the witness to give such testimony, the statements previously made by the witness contradicting the testimony given, would not be admissible. Second, it is not enough that the witness failed to tesify favorably to the party calling him in order that previous contradictory statements made by such witness may be introduced in evidence, but the witness must have testified to facts injurious to the party calling him before he can be impeached.

Such contradictory statements are permissible alone for the purpose of impeaching the witness, and cannot be considered as original substantive evidence against the adverse party. Third, when such contradictory statements are admitted in evidence under proper conditions, the court should clearly inform the jury that such statements can only be considered by them for the purpose of affecting the credibility of the witness, that it is for the jury alone to determine whether they do have this effect or not, and that such contradictory statements are in no sense being considered as original evidence against the adverse party. In the case at bar the county attorney in asking to introduce the previous statement of the witness did not claim surprise, but only claimed the witness did not testify in the trial of the case to the facts contained in the statement

previously made by the witness on September 20, 1927, while in the county attorney's office, and failed to testify to what the county attorney desired him to testify to. Under these conditions we think the statement made by the witness out of court injurious to the defendants was inadmissible in evidence, for the reason that the witness did not testify to some of the facts contained in the statement which was introduced in evidence, for the purpose of impeaching the witness.

Further, the record shows that, after the witness Frank had been taken into custody by the sheriff under order of the court to be held by the officer for charges to be filed, the court granted the request of the state, after the defendants had closed their case, to call the witness Frank and permit him to change his testimony given the previous day in the trial. To the action of the court in permitting the case to be opened and the witness Frank recalled, the defendants objected, which objection was overruled, and exceptions saved. We have here a record showing the state called a witness and examined him, and, when his testimony was not what the state desired it to be, the court permitted the state to impeach the witness by permitting statements made out of court to be introduced, and then, after the witness had remained in jail in custody of the officer, he was called out and permitted to change his testimony given in court.

We have here a record showing the testimony of the witness given in court and impeached by the party calling him, by introducing a statement claimed to have been made by him out of court and away from the defendants, or either of them, then recalled and another statement of facts testified to by the witness. All three of the statements were permitted to go to the jury without the court limiting or advising the jury the weight to be given the state-

ment made by the witness in court or out of court. No one can say that the jury did not consider the statements contained in the statement of Frank made out of court as original or substantive evidence. After the court admitted it, the jury would have been warranted in considering it, and especially would this be true when the court had failed in its instructions to limit the scope of that statement to impeaching and contradicting Frank. If the state has the right; upon the plea of impeaching its own witness, to introduce statements made by such witness contradictory to his testimony given in court, and getting the statement made out of court by the witness to the jury as the original substantive evidence against the defendants, then this court in all fairness would be compelled to hold that the defendants had the same right.

In Sturgis v. State, 2 Okla. Cr. 362, this court on page 392, 102 Pac. 57, 68, in discussing this question, after referring to the facts said:

"The far-reaching and ruinous consequences of such a rule are manifest. A defendant could place a witness upon the stand and, after asking him a few general questions, could then ask the witness if he had not made a statement (giving the statement in full) to the defendant, and other persons, which would constitute a complete defense. Upon the denial of the witness that he had made such a statement, the defendant could then place the parties named upon the witness stand and prove that the first witness had made such statements. If a defendant could do as was permitted to be done by the state in this case, it would be impossible to secure a single conviction, and no one would be subject to the pains and penalties of perjury."

For the reason herein stated we hold that the court erred in permitting the state to introduce the statement of the witness Frank, made out of court to impeach its own

witness, and by not withdrawing the statement made by the witness out of court, after the witness had been recalled and advising the jury not to consider the statement made out of court.

There are other errors complained of by the defendants which possess merit, but the view we take of this record it is not deemed necessary to lengthen this opinion further. The defendants are entitled to a fair and impartial trial, and under the facts set forth herein we cannot say they were accorded that fair and impartial trial guaranteed them by the laws of this state.

For the reasons herein stated the judgment of the trial court is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.