**Jess WEAVER, Plaintiff-in-Error,**

v.

**STATE of Oklahoma, Defendant-in-Error.**

**No. A–14035.**

Court of Criminal Appeals of Oklahoma.

Oct. 2, 1968.

Tony Waller, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal from conviction of the crime of First Degree Rape. Plaintiff in Error, hereafter referred to as defendant, was charged by information on December 3, 1965 in the District Court of Tulsa County with having committed First Degree Rape, on or about December 25, 1964 with his eight (8) year old daughter. Defendant was tried by a jury and convicted. The trial commenced on February 9, 1966 and the jury returned a verdict on February 11, 1966 finding defendant guilty and assessing punishment at one-hundred and twenty three (123) years confinement in the state penitentiary. Motion for new trial was denied on February 21, 1966, and judgment and sentence was passed in accordance with the jury's verdict, the same day.

Mr. Tony Waller, who was a Public Defender for Tulsa County at the time of this trial, was appointed to represent the defendant. He most ably represented defendant during the trial, perfected his appeal to this Court and submitted a brief in support of the appeal. The Court desires to commend Mr. Waller for extending his professional services beyond what was specifically required of his office as Public Defender.

Prior to defendant's preliminary hearing, upon his own application defendant was committed to Eastern State Hospital for a period of observation not to exceed ninety (90) days. Preliminary hearing was stayed pending the psychiatric report of defendant's mental condition. On September 20, 1965 the trial court was advised by letter signed by B. F. Patterson, M. D., Superintendent of the hospital, that defendant was not psychotic, that he could distinguish right from wrong, and that he should be able to assist legal counsel in his behalf. Defendant's preliminary hearing was held in Court of Common Pleas before Judge Cameron, who on November 24, 1965 bound defendant over to stand trial in district court. Defendant was arraigned in district court on December 8, 1965 and his trial date was set for January 11, 1966.

On the day of the trial, defendant's court appointed counsel filed an application with the court for a jury determination of defendant's present sanity, and also motion to suppress defendant's statement, confes-

sion, or any testimony provided by defendant for the reason the State had violated defendant's constitutional rights. On the following day the hearing was held on both of defendant's motions.

In support of his application to determine the state of his sanity, defendant offered testimony of Mr. Olin F. Hill, who was a psychology student at the University of Tulsa. After talking to defendant on two different occasions, Mr. Hill testified, that in his opinion, defendant was not competent to stand trial; and, that his evaluation was that defendant had the intellect of a seven (7) year old. However, the court denied the application for a jury determination of defendant's present sanity, but granted a continuance of defendant's trial until the February, 1966 jury docket.

Defendant's trial commenced on February 9, 1966 at which defendant was represented by his court appointed counsel. The State was represented by Mr. S. M. Fallis, who was at that time assistant county attorney for Tulsa County. After two days trial, the jury returned its verdict of guilty. Thereafter, defendant's appeal was perfected to this Court.

Defendant argues his appeal under eight propositions in his brief. However, insofar as this case must be reversed because of the errors set forth and argued in Defendant's propositions three and four, there is no need to discuss his other propositions.

Defendant's third proposition recited that it was prejudicial error for the prosecutor to cross-examine his own witness, Wilma Weaver, and to introduce her tape recorded extra-judicial statement into evidence. His fourth proposition alleges the trial court erred when it failed to instruct the jury that the tape recorded statement of the witness, Wilma Weaver, was introduced by the State for the sole purpose of impeachment and could not be considered as original evidence against the defendant.

Under his third proposition, defendant sets out that the trial court improperly permitted the playing of a tape recorded statement made by the witness, Wilma

Weaver, the wife of defendant, in which she stated she had observed the defendant have sexual relations with her daughter. Mrs. Weaver was called as a state witness. After she was sworn as a witness, she denied what was contained in the tape recorded statement. When such occurred, the State claimed surprise and requested permission of the court to play the recorded statement to refresh her recollection and for impeachment purposes. Over the defendant's objections, the trial court permitted the entire tape recorded statement to be played for the jury to hear.

The record reflects that at about ten o'clock in the morning on the second day of the trial, before the jury had taken its place in the jury box, defense counsel offered a statement executed by defendant's wife, which was witnessed by the jail matron. Counsel informed the court, that about five-thirty p. m. the previous day he visited the witness in the county jail (where she was being held as a material witness); that she dictated the statement to him after which she executed it in the presence of the jail matron, who then witnessed the statement. The statement refuted all that was contained in the tape recorded statement, and read as follows:

February 9, 1966

My husband, Jess Weaver, never did at any time molest or have intercourse with my little girl, Betty Weaver. The only reason I accused Jess of having intercourse with Betty was because, when I was arrested, I was told by S. M. Fallis & also by a deputy sheriff that it would help to get me out of jail & get my kids back. Everything contained in my recorded statement wherein I accused Jess of having intercourse with Betty was a Lie that I told to try to get my kids back.

Dated this 9th day of February, 1966

Wilma Weaver

Witness: Gussie Hallford

When the defense counsel presented the signed statement of Mrs. Weaver to the court, the prosecutor informed the court

that upon leaving the courtroom the previous day the witness advised him in the presence of her mother, Mr. Bivins, and the doctor that her testimony would be the same, as reflected on the tape recording; and he stated that the witness indicated she was fearful and did not appreciate the interference of counsel. The prosecutor concluded his statement to the court by saying, " * * * and we will stand by that testimony. We anticipate calling her today. I don't know whether she is going to refute it or not." Defense counsel countered the prosecutor's remarks by saying, "I have given the court notice—I have displayed to the court the statement by this woman last evening. If the county attorney wants this woman on the witness stand * * *." The prosecutor interrupted counsel by informing the court that such is a matter of impeachment on his part; and defense counsel concluded by saying, "Well, I want it in the record, Your Honor."

That afternoon the State called Wilma Weaver as a witness. Defense counsel objected and a discussion was had with the court, outside the hearing of the jury and the court overruled defendant's objection. Thereafter the following transpired: (CM–124).

Mr. Fallis: "May it please the Court may I now play this recording to refresh the witness' memory?"

Mr. Waller: "If Your Honor please, we would object to playing the record because it has not been properly identified, no chain of custody has been established, no testimony as to the accuracy."

The Court: "Lay the predicate."

Mr. Fallis: "May it please the Court, as I understand it she has stated she has made a contrary statement prior to this time. *I would like to refresh her memory* with that at this time. She will be able to identify whether or not it is her voice."

The Court: "I would like to know whether this is a contrary statement."

Mr. Fallis: "Mrs. Weaver, have you made a contrary statement before this?"

A. "What does that mean?"

Q. "Referring to your husband's relationship with Betty Weaver, your daughter, in December of 1964."

A. "Yes."

Mr. Fallis: "May I play that now, Your Honor?"

Mr. Waller: "I still say there isn't a proper predicate. I object to it.

Mr. Fallis: "There is no necessity to show it was a very voluntary statement on her part. *This is for the purpose of surprise, to impeach this witness* who has obviously changed her testimony between now and last night for some reason."

Mr. Waller: "We object to—there is no proper identification of the recording and we will continue to object."

The Court: "Overruled."

Thereafter the entire tape recording was played to the jury, which consumes eleven pages of the casemade, and which was most damaging to the defendant. However, even after the recording was played, the witness admitted that it was her voice and that she made the statement, but she denied the truth of it. On cross-examination by defense counsel, the witness reiterated that the assistant county attorney and a deputy sheriff told her that if she made a statement she would clear herself and get out of jail.

■ Defendant cites a long list of decisions from this Court, which recite the rule of law concerning impeachment of one's own witness; however, the case of Gillaspy v. State, 96 Okl.Cr. 347, 255 P.2d 302, sufficiently states that rule, as well as most of the earlier decisions, as follows:

"A party cannot impeach his own witness by introducing in evidence conflicting statements made by him, unless he should testify injuriously to the party placing him on the stand, and if the witness does not testify as the party expected him to do, affords no ground for the introduction in evidence of previous contradictory statements made by such witness." See

also: Wiese v. State, 47 Okl.Cr. 59, 287 P. 1099.

In the next paragraph, this Court continued:

"When contradictory statements made by a witness are admissible in evidence for the purpose of impeaching him, they must be confined to contradictions of the testimony of the witness which are injurious to the party seeking to impeach him, *and it is the duty of the court to clearly inform the jury that such statements cannot be considered as independent substantive evidence* against or in favor of the defendants, and they can only consider such contradictory statements for the purpose of affecting the credibility of the witness, if the jury decides that such statements do have this effect, and it is unlawful for the jury to consider said statements for *any other* purpose." See also: Akins v. State, 91 Okl.Cr. 47, 215 P.2d 569. (Emphasis added).

In the Gillaspy case supra, this Court found it was error when the trial court failed to instruct the jury—that none of the contradictory statements could be considered as substantive evidence. In the case at bar, the record reflects that the trial court did not give such instruction notwithstanding the fact that defendant's first requested instruction covered that aspect of the testimony. The trial court refused defendant's requested instruction and attempted to cover the subject of contradiction in its instruction number eight. Defendant's requested instruction read, as follows:

"Defendant's Requested Instruction No. 1

You are further instructed that a certain tape recorded contradictory statement has been permitted to be introduced by the State in this case for the sole purpose of impeaching the witness Wilma Weaver; *and you are instructed that such statement cannot be considered as independent substantive evidence* against the Defendant, Jess Weaver, and the jury can only consider such contradictory tape

recorded statement for the sole purpose of affecting the credibility of the witness and the jury must not consider such statement for any other purpose." (Emphasis added).

The trial court refused this instruction and used the following instead:

"No. 8

You are instructed that a witness may be impeached by proof of contradictory statements made by him outside of the courtroom contrary to and inconsistent with his testimony given at the trial; or that he has testified in another proceeding involving the same subject matter different from and inconsistent with his testimony sought to be impeached; and if you believe that any witness has wilfully testified falsely, or has been impeached, then you may wholly disregard any part or all of said witness' testimony if you so desire, but you are not compelled to do so."

The record also reflects that defendant properly raised his objection to the trial court's failure to instruct the jury on the "substantive question" as it pertained to impeachment testimony, as well as in his motion for new trial, and on this appeal.

This State has long followed the majority rule in this respect. In an early case, the rule pertaining to the impeachment of a "surprise witness" was well stated by Judge Furman in Sturgis v. State, 2 Okl.Cr. 362, 389, 102 P. 57, 67 (1909). In that case the county attorney claimed surprise when his witness testified differently to what he expected, even though the witness had testified in the same manner at an earlier trial of the co-defendant. Judge Furman in discussing the element of surprise stated: "But suppose a witness makes a statement to a party which would be highly beneficial to such party, and the party, thus having reasonable ground to believe that the testimony of the witness would be in substance the same as the statement made, in good faith places the witness upon the stand, and the witness, instead of swearing to the statement previously made, testifies to

matters which are injurious to the party calling him, it would be a manifest perversion of justice to say that the party so surprised, deceived and imposed upon is bound by such testimony. Under these conditions the great weight of modern authority is that a party, upon grounds of surprise at and injury from the testimony so given, may, in the discretion of the trial court, offer in evidence previous statements of such witness which contradict the injurious portions of his testimony." Judge Furman continued in the Sturgis case, supra:

"But this rule is subject to certain conditions:

First: The party must be surprised at the testimony of the witness sought to be so impeached, *and this surprise must exist as a matter of fact;* that is, it must be based upon such facts as would give the party reasonable ground to believe that the witness would testify favorably to such party. If the facts were such that the party had no reasonable ground to believe, *when he placed such witness on the stand,* that the witness would so testify, then no surprise could exist at the failure of the witness to give such testimony, and statements previously made by the witness, contradicting the testimony given, would be admissible.

Second. It is not enough that the witness failed to testify favorably to the party calling him, in order that previous contradictory statements made by such witness may be introduced in evidence, but the witness must have testified to facts injurious to the party calling him before he can be so impeached. In other words, *such contradictory statements are permissible alone for the purpose of impeaching the witness, and are not original substantive evidence* against the adverse party.

Third. When such contradictory statements are admitted in evidence, under proper conditions, *the court should clearly inform the jury that such contradictory statements can only be considered by them for the purpose of affecting the credibility of the witness,* and that it is for the jury alone to determine whether they do have this effect or not, and that such contradictory statements are in no sense to be considered as original evidence against the adverse party." (Emphasis added).

There is little doubt in our minds that the jury considered the tape recorded statement as original evidence against the defendant.

This Court recited in the Sturgis case, supra, that insofar as the county attorney knew that the witness' testimony would not be the same as that contained in his earlier statement, he was in no position to claim surprise. The fatal error in the Sturgis case—in this respect, coupled with others—was the failure of the trial court to instruct the jury that the evidence should be considered only as impeaching or contradicting testimony and for no other purpose. In that case, as in the case under consideration, defense counsel requested the instruction limiting the statement for impeaching and contradictory purposes only, but the trial court refused to give such instruction. There is no doubt also, that the witness' testimony (wherein she denied what was contained in the recorded statement) weakened the State's case and in this respect was injurious to the State, but even so that standing alone is not sufficient to bring the matter within the rule.

█ The record in this case reflects that the prosecutor was informed and shown the witness' statement, before she was placed on the witness stand. It appears also, that the prosecutor had sufficient time before he called his witness to ascertain whether or not he had reasonable ground to believe her testimony would be the same, as it was on the recording. In this respect, we believe the statement of the United States Court of Appeals, Eighth Circuit, in Ellis v. United States, 138 F.2d 612, 616, is applicable here. That Court said: "It might be contended with some cogency that the district attorney was dis-

appointed rather than surprised in the strictest sense of the latter term."

■ Further, insofar as the defendant properly offered a written instruction covering the issue, objected to the court's failure to give the instruction, included the alleged error in his motion for new trial, and urges such in his appeal we can only conclude that he has properly preserved his objection, which must therefore be treated as reversible error. Likewise, there is little question in our minds that the contents of the recorded statement were treated as substantive evidence against the defendant. The error might have been cured had the proper instruction been given, but such was not done in this case.

Therefore, for the reasons stated herein this case is reversed, and remanded for a new trial.