**Lirean L. KIMBLE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–682.**

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1977.

Leslie Earl, Public Defender, Pete Silva, Jr., Asst. Public Defender, Tulsa County, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

OPINION

BLISS, Judge.

The appellant, Lirean L. Kimble, hereinafter referred to as defendant, was charged, tried by jury and convicted in the District Court, Tulsa County, Case No. CRF–75–2567, with the offense of Manslaughter in the First Degree, in violation of 21 O.S.1971, § 711. His punishment was fixed at five (5) years' imprisonment to be served in the State penitentiary. From said judgment and sentence the defendant has perfected a timely appeal to this Court.

At trial the State called Belton Inkton, Larry Robinson, Herbert Robinson, and Dwayne Mayfield, as witnesses, all of whom testified essentially the same. The testimony reveals that during the early evening of October 16, 1975, the defendant, these witnesses and the deceased were playing dominoes and drinking wine at the deceased's mother's birthday party. The defendant became quite intoxicated. When his friends tried to put him on a couch he became belligerent and struggled with them, knocking over some furniture. Belton Inkton then wrestled the defendant to the floor and held him down while trying to determine what was wrong with him. The defendant was then persuaded by a friend and his sisters to go home, but he returned a short time later with a whiskey bottle. The defendant put the bottle down and confronted his companions, asking why they were "jumping" on him. After being unable to convince the defendant that there would be no fighting and that he should go home, the decedent, A. J. Harris, threw a gin bottle onto the sidewalk. The defendant then ran back to the curb, picked up his bottle, broke it on the curb, and walked toward the decedent, smiling. The defendant swung the bottle up and hit A. J. Harris in the throat. The defendant then ran away, with A. J. Harris and several other friends in pursuit. Harris collapsed a few steps later.

Dr. Lee F. Beamer, pathologist, testified concerning the autopsy which he performed on the deceased. The cause of death was due to a great loss of blood from two deep

lacerations in the deceased's neck, which severed the jugular vein. Dr. Beamer further testified that it would be possible but highly improbable that the depth of the wounds could have been produced by throwing a bottle, even at a close range. The additional scratch marks on the victim's throat indicated to the doctor that the bottle had been moved around while in the skin.

The State rested.

The defendant called Carolyn Tibbs, Vera Tibbs, Calvin Ragland and Lena Kimble. These witnesses corroborated many events as presented in the State's case, and their testimony differed concerning only two important details. The decedent, A. J. Harris, instead of throwing the gin bottle onto the sidewalk, broke the bottle, retaining a jagged piece in his hand. A. J. Harris then advanced toward the defendant throwing the broken piece of the bottle and another small bottle at the defendant. The defendant then retaliated by throwing his broken bottle, striking A. J. Harris in the neck.

The defense witnesses also stated that the defendant attempted to take a butcher knife from his mother's apartment to the scene of the incident, but acquired a whiskey bottle after having the knife taken away.

The defendant testified on his own behalf, corroborating essentially what the defense witnesses stated. He stated that earlier in the evening Belton Inkton had hit and choked him before allowing him to get up and go home. The defendant stated that he was angry and wanted to "get" Belton Inkton. After A. J. Harris threw two bottles at the defendant all of the other people present started coming at the defendant. Defendant stated that he threw his bottle at the whole crowd, not really knowing that it hit A. J. Harris.

The defense rested.

The defendant raises as his sole assignment of error that the trial court erred in admitting gruesome and highly prejudicial photographs.

In *Johnson v. State*, Okl.Cr., 478 P.2d 969 (1970), this Court stated in the first and second paragraphs of the Syllabus:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places.

"Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissible when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant."

Also see, *Rowbotham v. State*, Okl.Cr., 542 P.2d 610 (1975).

In the case at bar, the photographs were identified by several witnesses as being the true and correct pictorial representations of the body of the deceased, A. J. Harris. The body was fully clothed and the wounds were prominent without being unnecessarily gruesome. Furthermore, the photographs were relevant to the issue of the manner in which the wounds were inflicted on the deceased by defendant. While Dr. Beamer testified that the wounds were inflicted by one holding the broken bottle in his hand, the defendant contended that he threw the bottle in fear for his safety. The photographs had probative value in that they appeared to corroborate Dr. Beamer's testimony. Therefore, we hold that the probative value of the photographs clearly outweighed the prejudice to the defendant.

For the above and foregoing reasons the judgment and sentence appealed from should be and the same is, hereby, *AFFIRMED.*

BRETT, P. J., and BUSSEY, J., concur.