Rosalee Beatrice UTT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–430.

Court of Criminal Appeals of Oklahoma.

April 26, 1979.

Rehearing Denied June 5, 1979.

Bloodworth, Smith & Biscone, Robert B. Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Givens L. Adams, Asst. Atty. Gen., for appellee.

### OPINION

BUSSEY, Judge:

Appellant, Rosalee Beatrice Utt, also known as Kitty Utt, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, with the crime of Murder in the Second Degree, in violation of 21 O.S.Supp.1975, § 701.2, Case No. CRF–76–131. The jury found the defendant guilty of the crime as charged, and the defendant was sentenced to serve a term of ten (10) years to life imprisonment in the Oklahoma State Penitentiary. From said judgment and sentence, the defendant has brought her timely appeal.

The facts adduced at trial are as follows. The defendant had been having an illicit affair with the victim's husband prior to the killing. She publicly expressed her hope that Mrs. Cochran would die so that she could marry Mr. Jon Cochran, Sr.

Richard Pickinpaugh, who was convicted of Second Degree Murder for the killing of Mrs. Cochran, testified that the defendant told him in February, 1974, that she needed Mrs. Cochran out of the way. The defend-ant gave Pickinpaugh an envelope and told him to contact Vernon Heath about a job she needed him to do for her. Mr. Heath referred Mr. Pickinpaugh to a man, Donald Surratt also known as Donald Babb, also known as Don Smith. Pickinpaugh met Mr. Surratt at the Greenwood Club in Midwest City, Oklahoma, in February, 1974, at which time he delivered the envelope. Surratt read the contents and said he would do the job for $2,000 or $3,000. Pickinpaugh re-layed this reply to the defendant and met Surratt again in March, 1974, at the defend-ant's request. He delivered another en-velope to him which contained $1,500 in one hundred dollar bills. Pickinpaugh also showed Surratt the location of the Cochran house. Later in March the defendant and Jon Cochran, Sr., went on a trip to North Carolina, but before she left, the defendant gave Pickinpaugh another envelope contain-ing $1,500 to give to Surratt. She told Pickinpaugh that Mrs. Cochran was to be killed while she was in North Carolina. Pickinpaugh contacted Surratt and gave him the money. While in North Carolina, the defendant called Pickinpaugh to see if Mrs. Cochran had been killed, and she be-came angry when she learned Mrs. Cochran was alive. When the defendant returned from North Carolina, she called Vernon Heath and told him to kill Mrs. Cochran or his life would be in danger. Then on April 30, 1974, the defendant went to Rocky Thornton's house and secretly took one of his guns off the wall. She called Pickin-paugh that evening and told him to come to her house. When he arrived, she showed him the gun and said it would be used to kill Mrs. Cochran.

On May 1, 1974, the defendant called Pickinpaugh and told him to borrow a car and meet her. He borrowed a car from a used car lot and met the defendant at the Target Store on May Avenue in Oklahoma City, Oklahoma. She told him that the man she hired to kill Mrs. Cochran would not do the job, and she needed him to do it. She said that if Pickinpaugh did not kill Mrs. Cochran, then his life and the lives of his family would be in danger. She then gave

him the gun she had shown him the night before. Pickinpaugh went to the Cochran house and killed Mrs. Cochran. He then went back to work, after returning the car to the car lot. That evening he went to the defendant's house, and she told him that Mrs. Cochran was dead, and that he should leave town. He fled to Colorado where he was arrested. Subsequently, the defendant was also arrested.

In the defendant's first assignment of error, she asserts that the trial court erred in admitting into evidence the video taped confession of Richard Pickinpaugh. Defendant contends that the statement was inadmissible as being a prior consistent statement. Defendant relies on *Driggers v. U. S.,* 21 Okl. 60, 95 P. 612 (1908), wherein the Supreme Court of Oklahoma stated that as a general rule where evidence of contradictory statements is offered to impeach the witness, evidence of former statements consistent with his statement at trial, is inadmissible. Prior consistent statements are admissible where it is charged that the evidence of the witness is a recent fabrication, due to a later altered relationship to the party, or the cause, or of some motive or personal interest. In the instant case, the video taped statement does not fall within the rule of prior consistent statements. The video taped statement introduced by the State was one of the statements already used by the defense to impeach the witness Pickinpaugh. Since the defendant used the statement to establish prior inconsistencies of the witness, the State was justified in seeking to have the entire statement presented to the jury in order for them to ascertain the extent to which the earlier statement was consistent or inconsistent with Pickinpaugh's testimony at trial. We believe the case of *Huntley v. Territory,* 7 Okl. 60, 54 P. 314 (1898), controls the present situation. The defendant in that case, introduced extracts of testimony of witnesses from a former trial for impeachment purposes. The trial court then allowed the territory to introduce the entire transcript, and to read all the testimony of these witnesses at the former trial relating to the facts of the alleged contradiction. The Court stated:

"A party cannot offer in evidence a part of a document, conversation, or transcript of a witness' testimony for the purpose of impeaching the witness, and then complain that the court permits the remainder of such document, conversation, or transcript to be introduced to rebut the apparent impeachment. Counsel cannot be permitted, for the purpose of impeaching a witness, to introduce extracts of the former testimony of such witness, and then be heard to complain that the whole of such testimony was introduced, and the whole truth given to the jury. . . ."

Defendant also asserts that the trial court erred in presenting the video tape to the jury without first viewing the tape in an in camera proceeding. The defendant contends that had the trial court viewed the statement, then certain hearsay evidence would have been deleted. In the present case, the attorneys argued the admissibility of the video tape to the trial court out of the presence of the jury. We note that a transcript of the video taped statement is a part of the record and was used at trial in cross-examining witness Pickinpaugh. Although the trial court did not view the tape, the court was informed as to its content. Moreover, the trial court clearly admonished the jury, prior to the presentation of the video tape, that the tape was not being admitted for the purpose of proving the assertions therein, but that it was only for their use in determining the credibility of the witness. We have carefully examined the record and find that the material the defendant finds objectionable, was not such as would cause any prejudice to occur. See, 20 O.S.1971, § 3001.

The defendant lastly contends that the introduction of the video statement by Mr. Pickinpaugh was prejudicial to defendant for the reason that it unnecessarily displayed emotion of the witness, since a cassette containing only the audio portion was available to the State. After viewing the video tape, the Court cannot say that it

prejudiced the defendant. The crying of the witness would have been apparent to a listener even without the video portion. Moreover, the record shows that the witness cried several times during his testimony at trial. We fail to see how the jury was prejudiced by seeing the witness cry on video tape, because the jury was already aware of his propensity for crying.

The defendant contends, in her second assignment of error, that the trial court erred by refusing to admit the sworn statement of Robert Purdue taken by Detective Snipes of the Oklahoma City Police Department on May 13, 1974. Richard Pickinpaugh allegedly told Robert Purdue that "he was going to have somebody kill Mrs. Cochran." Defendant asserts that the statement was beneficial to her because it tended to prove that Pickinpaugh was solely responsible for the death of Mrs. Cochran.

The out of court statement offered for the truth of the matter asserted is hearsay. *Doyle v. State*, Okl.Cr., 511 P.2d 1133 (1973). Robert Purdue did not testify at trial nor was the alleged statement taken in an adversary proceeding as to allow cross-examination of the witness by the State or the defense. *Murray v. State*, Okl.Cr., 562 P.2d 1157 (1977). The inherently unreliable nature of out of court statements is further demonstrated in this case, by the fact that during his testimony at the defendant's preliminary hearing in March of 1976, Purdue denied that Pickinpaugh made the now complained of statement to him. Instead, Purdue stated that Pickinpaugh said, "if Mrs. Cochran was done away with that Kitty and John Cochran could be happy again, happy." Following the trial court's decision not to admit the statement, the defendant resumed his cross-examination of Pickinpaugh concerning statements he made to Purdue prior to Mrs. Cochran's death. While the statement was not physically admitted into evidence, the defendant was allowed to present the substance of the statement to the jury, in an attempt to impeach Pickinpaugh. Therefore, we find that the trial court properly excluded the statement, and this proposition is without merit.

In the defendant's third assignment of error, she asserts that the trial court erred in failing to sustain defendant's objection during the State's closing argument to the characterization of defendant as the "sister of satan." After carefully examining the record, we find that although defendant objected to the now complained of closing remarks, he failed to request an admonition by the court directed to the jury, not to consider such remarks. As often stated in this jurisdiction, the defendant must not only object to alleged improper statements, but he must go further and move the court to exclude such remarks from the consideration of the jury, unless the error could not be cured by withdrawal of the remarks. *Hill v. State*, Okl. Cr., 560 P.2d 213 (1977). We do not find that this singular statement in the prosecutor's argument was so manifestly prejudicial that defendant was denied a fair trial.

The defendant alleges in her fourth assignment of error, that the trial court erred by admitting into evidence photographs of the deceased's body at the scene of the crime. Defendant contends that these black and white photographs Exhibits 19 through 22, were without probative value and prejudiced the rights of the defendant. We have often stated that the admissibility of allegedly gruesome photographs is addressed to the sound discretion of the trial court. Where the photographs are shown to be a faithful reproduction of whatever they purport to reproduce, such photographs are admissible where relevant, and the probative value is not outweighed by the danger of prejudice to the accused. See *Kimble v. State*, Okl.Cr., 559 P.2d 859 (1977); *Noah v. State*, Okl.Cr., 562 P.2d 950 (1977). The photographs in the instant case here are not, in our opinion, ghastly or gruesome. They show the position of the body in relation to the room, and the point of entry and exit of the bullet which killed the victim. The photographs were properly admitted as being corroborative of the testimony of the witnesses. This assignment of error is also without merit.

For all of the above and foregoing reasons the judgment and sentence appealed from is *AFFIRMED*.

CORNISH, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge, dissenting.

I respectfully dissent to this decision. I would grant the defendant a new trial.

I believe the showing of the videotaped confession of witness Pickinpaugh was highly prejudicial. As I view the record, the prosecutor should have used the same transcript of the confession that defense counsel used to rehabilitate his witness. Pickinpaugh had made at least three other statements each of which contradicted the other. There appeared to be no other simple way to identify the confession other than to refer to the videotaped confession, which defense counsel did, in an effort to show the contradictory statements the witness had made. When the videotaped confession was shown to the jury, it was the same as permitting the witness to testify again, but without being subject to cross-examination. In addition it tended to over-emphasize his testimony. I can see a clear distinction between the situation in *Huntley v. Territory*, supra, and the facts of the instant case. In *Huntley* the transcript of testimony taken at the preliminary examination was introduced into evidence. But that was testimony taken under oath. In the instant case no oath was given when the videotape was taken. Also, the statement in *Huntley*, that includes the word "conversations", is pure dictum. On the basis of that statement most anything would be subject to introduction into evidence.

Also, I can see no probative value in allowing into evidence the photographs of the dead body of Mrs. Cochran. Pickinpaugh testified that he killed the lady and how he did the act. Therefore, I can see no particular value in the photographs other than to arouse the prejudices of the jury. There is little doubt in my mind that the photographs had that effect. The defend-ant in this case was not being tried for the murder of Mrs. Cochran, but with aiding and abetting the crime.

Therefore, after considering this record in its entirety, I would grant the defendant a new trial.