Jerry McCRACKEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–91–996.

Court of Criminal Appeals of Oklahoma.

Oct. 12, 1994.

Rehearing Denied Jan. 25, 1995.

---

Creekmore Wallace, Kelly Hake, Ron Wallace, Sapulpa, for appellant, at trial.

Tom Gillert, Sam Cox, Asst. Dist. Attys., Tulsa, for State, at trial.

W. Creekmore Wallace, II, Sapulpa, for appellant, on appeal.

Susan Brimer Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee, on appeal.

## OPINION

JOHNSON, Vice Presiding Judge.

Jerry McCracken, hereinafter referred to as Appellant, was convicted in the District Court of Tulsa County, Case No. CRF-90-4347, of four (4) counts of First Degree Murder in violation of 21 O.S.1991, § 701.7(A). Appellant was tried by jury who recommended the death sentence for each count, having found the existence of six (6) aggravating circumstances. The trial judge, The Honorable Clifford E. Hopper, sentenced accordingly. From this Judgment and Sentence, Appellant appeals to this Court.

### STATEMENT OF FACTS

The record reveals that Appellant was on pre-parole release from the Oklahoma Department of Corrections and was residing at

a facility run by the Tulsa Action Group. On Monday, October 9, 1990, Appellant purchased a .22 caliber gun from a co-worker. On the evening of October 13, 1990, Appellant and co-defendant, David Lawrence, were at the Ferndale Lounge in Tulsa, Oklahoma. One witness, Dee Dee Nelson, testified that she had been working at the Lounge earlier that evening and noticed that Appellant and Lawrence appeared "nervous." Another witness, Patricia Harrington, testified that she was at the Lounge at approximately 7:30 p.m. that evening until approximately 12:30 a.m. While there, she witnessed a confrontation between Appellant and another patron named Randy Dunn, who she described as drunk. She saw Mr. Dunn slam a knife on the bar and say to Appellant, "If you want some shit, you can get it right here", to which, Appellant picked up the knife and echoed the same sentiment. Ms. Harrington, who owned a bar, described both Appellant and Mr. Lawrence as "very drunk."

Donald Tillerson testified that he was at the Lounge that evening for approximately fifteen minutes before he departed at about 12:55 a.m. Tillerson testified that he observed and heard Appellant and Mr. Lawrence engage in what he called, "institutional talk", saying to each other that they were not afraid of "getting an ass whuppin'" and they weren't afraid to shoot somebody. When he left the Lounge, there were six people there, the four victims, Appellant and Mr. Lawrence. Witness, Cathrine Dacre, testified that she left simultaneously with Mr. Tillerson and the same six people remained.

Witness Leonard Helton testified that he was at the Lounge between 12:15 and 12:30 a.m. He left and returned a little after 1:00 a.m. when as he entered, he saw one of the victims, Steve Smith, lying up against a wall, covered with blood on his head and chest. He went across the street and reported what he saw to three Tulsa police officers who had stopped at the convenience store.

Appellant testified that he had purchased a .22 caliber gun several days before the incident to protect himself from the gangs in the neighborhood and to protect his girlfriend. He planned on selling the gun after his release from pre-parole prior to his return to his home in Tennessee.

On the night in question, Appellant and Mr. Lawrence arrived at the Lounge between 7:00 and 8:00 p.m. During the course of the evening, Mr. Lawrence asked to see the gun and inquired as to whether Appellant would "sell it to him, let him keep it for awhile." Appellant let Mr. Lawrence have the gun. Appellant recalled that Mr. Lawrence kept joking about robbing the place, but he did not take him seriously. He testified that Lawrence went to the bathroom and when he came back, Lawrence started the robbery by pointing the gun up in the air and declaring, "This is a robbery." He described in detail how Lawrence shot the four victims.

Mr. Lawrence pled guilty earlier to the crime charged and testified that it was Appellant who committed the robbery and who shot the four victims.

## ISSUES RELATING TO GUILT-INNOCENCE

■ Appellant has presented twenty-two (22) assignments of error. In his first assignment of error, Appellant asserts that the trial court erred in overruling his motion to quash alleging there was insufficient evidence presented at the preliminary hearing. We do not agree. At preliminary hearing, the State only has the burden to show that an offense has been committed and that there is probable cause that the defendant committed the offense. *See Baker v. State,* 593 P.2d 100 (Okl.Cr.1978). Appellant complains that the evidence merely showed that Appellant was present at the scene and that there was nothing to show that he was involved in the crimes. We do not agree. The evidence revealed that Officer Makinson of the Tulsa Police Department arrested Appellant. Officer Makinson testified that Appellant told him that he had his revolver with him at the Lounge and that co-defendant Lawrence decided to rob the bar. Additionally, Appellant told him that Mr. Lawrence did the actual shooting. This assignment is without merit.

■ In his second assignment, Appellant urges that the trial court erred in allowing

the prosecutor to lead co-defendant Lawrence, who testified as a witness for the State. He cites three instances to which there were objections, one of which was sustained. Appellant has cited no authority for this assignment of error. However, we have reviewed the instances in question and cannot find that they determined the sentence or affected the verdict.

■ Third, Appellant asserts that the trial court erred in not allowing him to impeach co-defendant David Lawrence, by admitting into evidence his video-taped statement to the authorities. It is conceded that in the video-taped statement, Mr. Lawrence recounted the events and circumstances leading up to the robbery and the murders. He maintained that he was unaware that Appellant was planning a robbery and that it was Appellant who shot the four victims. At trial, he admitted his involvement in the robbery, but he still maintained that he did not know that Appellant had planned on harming anyone. A transcript of the video-taped statement was available.

Appellant argues that in view of the fact that the defendants point the finger at each other, credibility and reliability are key to determining which one actually shot the victims. Since Mr. Lawrence claimed that at the time he made the statement he was nervous, scared, at times stuttering, Appellant contends that the video-taped statement "as perceived visually and audibly was the best and fairest measure of his truthfulness". He states that Mr. Lawrence had more time to reflect and prepare prior to giving his statement for his plea of guilty and again at Appellant's trial. Appellant points out that while Mr. Lawrence maintained that he was now telling the truth (at trial), "the jury should not be able to rely on him to say when he's lying but should be allowed to make their own judgment." Appellant made several attempts to have the video-taped statement shown to the jury. In the first instance, the trial court agreed. However, when the State objected, the trial court would not allow the video-taped interview to be viewed. In the last attempt to have the video-taped statement shown to the jury, the record reflects the following transpired:

**MR. WALLACE:** Let the record further reflect that before the exception, this Court indicated to me, show it. For the life of me, I don't know why you changed your mind, sir. Originally, when I asked to show it, you stated for the record, show it.

**THE COURT:** Let me make the record very clear. The way the conversation that I had—the little bit of conversation that I had heard before and the presence of the tape in your possession and that the District Attorneys had agreed to furnish you with the equipment. I thought it was being offered by agreement of the parties. Once an objection was made of record, then we will proceed according to the rules of procedure. I'll give you an exception to the Court's ruling.

**MR. WALLACE:** Could the Court, so I could research it over the lunch hour, tell me the basis for your objection.

**THE COURT:** What?

**MR. WALLACE:** Could the Court, so I could review it over the lunch hour, tell me the specific reason for the Court granting the objection?

**THE COURT:** I just told you, and the record is replete with it. The Court will be in recess till 1:25.

The extent of cross-examination rests in the sound discretion of the trial court and this Court will reverse only if that discretion is clearly abused, resulting in manifest prejudice to the accused. *Hickerson v. State,* 565 P.2d 684 (Okl.Cr.1977). We have viewed the video tape in question and find that any error in failing to allow the jury to view the tape was harmless in light of the overwhelming evidence of Appellant's guilt. The tape does not reflect what is stated by Appellant. Appellant had proper cross-examination by transcript of the tape. The actual tape would not have changed the outcome.

■ In his fourth assignment of error, Appellant claims that the trial judge's comments, combined with his repeated overruling of defense objections, destroyed defense counsel's credibility and harmed the defense. First, Appellant did not object to the comments of which he now complains. Thus, this

Court will review only for plain error. *Smith v. State,* 736 P.2d 531, 534 (Okl.Cr.1987). We have reviewed the comments, and while the trial judge should have refrained from any comments, we do not find that they constitute reversible error.

For his fifth proposition of error, Appellant complains that the prosecutor was guilty of numerous instances of prosecutorial misconduct during both stages of trial which denied him a fair trial. First, he objects to the prosecutor's remark during closing argument where he stated, "If we had objected during closing argument of counsel for misstatements of evidence, we would still be here." This comment was not met with objection and is therefore waived. *See Leigh v. State,* 698 P.2d 936 (Okl.Cr.1985).

■ Second, Appellant objected to the prosecutor's argument, ". . . and to suggest in this case that there was not suffering to Carol McDaniels and Timothy Sheets is offensive." We find this comment to be a reasonable comment on the defense's assertions and within the realm of permissible prosecutorial argument. *See Dean v. State,* 778 P.2d 476 (Okl.Cr.1989).

■ In one instance, the prosecutor asked the jurors what would they explain to themselves in the mirror tomorrow if they found Appellant not guilty. In another instance, the prosecutor requested the jury to send Appellant a "message" by convicting him. We find both comments to be permissible within the context of the evidence in this case. *See Croan v. State,* 682 P.2d 236, 238–239 (Okl.Cr.1984).

■ Next, Appellant claims the prosecutor misstated the evidence when he argued to the jury to consider the sort of person "to apparently stalk Carol McDaniels to the back of the bar to finish her off, . . ." Also, Appellant claims that the prosecutor misstated the law when he told the jury that they must find that Appellant knowingly created a great risk of death to more than one person, "whether he is the shooter or not . . .". We note that neither remark was objected to at trial. In any event, neither comment amounts to a significant misstatement nor can be considered purposeful attempts to mislead the jury. *See Wing v. State,* 579 P.2d 196 (Okl.Cr.1978).

■ Appellant also complains of the prosecutor's characterizations of him. One, the prosecutor tried to label Appellant a liar when he stated, ". . . and I submit to you because he cannot tell you the truth because to tell you the truth, he would have to tell you what he did and he cannot do it." Two, the prosecutor used the phrase "people among us like Jerry McCracken" and inferred that Appellant was twisted, sick and without remorse. We do not find the aforesaid comments to be objectionable.

■ Further, Appellant asserts that the prosecutor incited the passions of the jury when he suggested to the jury that it would be unfair to send Appellant to the penitentiary with other people. In this case, Appellant was found in jail with homemade knives. Thus, the prosecutor was arguing the case at hand and the existence of the aggravating circumstance of continuing threat. *See Stouffer v. State,* 738 P.2d 1349, 1358 (Okl.Cr. 1987).

■ Appellant's last assertion of prosecutorial misconduct is the prosecutor's use of Appellant's juvenile record. Notice of the record was not given to defense in the Notice of Aggravation. This assertion is also the basis of Appellant's fourteenth assignment of error. The record reveals that it was defense counsel who opened the line of questioning about Appellant's juvenile charges on direct examination. Thus, we find the prosecutor's cross-examination in this area to be proper.

■ In his sixth assignment of error, Appellant contends that even though his defense was that of innocence, the trial court erred when it did not instruct on voluntary intoxication as requested. There was evidence presented to show that Appellant had been drinking beer and bourbon for at least five hours prior to the murders. Two of the State's witnesses described him as very drunk. However, during his trial testimony, Appellant presented no evidence that he was in a state of intoxication such that he was not in control of his mental faculties. The only

testimony from Appellant regarding his state of intoxication came during cross-examination. In response to the Prosecutor's questioning about whether Appellant or his co-defendant were talking and reinforcing each other as to how either one of them would shoot somebody or "stick somebody" up, Appellant responded:

> I was agreeing—I mean I wasn't for real. I'm drunk, all the people in here is drunk. People always talking crap. You don't know whether they're being real or not—when he was talking this, but he didn't say nothing about killing nobody....

Appellant also said he could not say how long this type of talk went on, because he was drunk.

Appellant described with particularity the events and circumstances of the evening in question. Appellant also gave a detailed description of the robbery and murders. Accordingly, the trial court, in a proper exercise of its judicial duty, found insufficient evidence to warrant an instruction on the defense of intoxication. *Crawford v. State*, 840 P.2d 627, 638 (Okl.Cr.1992), no error is found.

■ Next, Appellant complains that the trial court erred in failing to sequester the jury. The trial court, after Appellant's motion to sequester the jury, recessed the trial at the end of the completion of the guilt stage and, with an admonition, allowed the jury to go home over the weekend. He makes several arguments. One, this was the biggest mass murder trial since the Steak House murders and a great amount of publicity had focused on the trial. Thus, the jury was unnecessarily exposed to trial publicity over the weekend. Second, this 3–day break violated 21 O.S.1981, § 701.10, which requires the sentencing stage to be before the same jury *as soon as practicable.* He argues that the potential for memory lapse, combined with the potential for media exposure or outside pressure rendered the second stage sentencing a "presumably prejudiced speculative occasion where passion prevailed over mercy, especially since the first stage evidence was 'adopted' during the Second stage". Further, the burden is on the State to show that no injury resulted.

It has been long held that on the question of separation of the jury before final submission of the case, the burden is on the defendant to show prejudice, but if separation is after final submission, the burden is on the State to show absence of prejudice. *Martin v. State*, 58 Okl.Cr. 187, 51 P.2d 584 (1935). However, in this case, the sequestration took place between the First and Second stages of the trial.

This Court has held that allowing the jury to separate after its verdict in the first stage of a bifurcated proceeding and prior to the submission of any evidence in the second stage of the proceeding did not constitute error. *See Wright v. State*, 561 P.2d 556, 557 (Okl.Cr.1977), citing *Gatlin v. State*, 553 P.2d 204 (Okl.Cr.1976).

### PUNISHMENT

■ In his eighth assignment of error, Appellant claims that the trial court erred in refusing to "life qualify" the jury and to instruct on the presumption of life. We find Appellant's argument similar to that addressed and rejected in *Johnson v. State*, 731 P.2d 993, 1003 (Okl.Cr.1987), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). In this case, the jury was instructed that Appellant was presumed innocent unless his guilt was established beyond a reasonable doubt. Further, the jury was instructed that it could not consider a sentence of death unless it unanimously found beyond a reasonable doubt the existence of an aggravating circumstance and that such circumstance outweighed any mitigating circumstances. We believe that the instructions given communicated the proper standards to guide the jury in its deliberations.

As to Appellant's contention that the trial court erred in refusing to ask the questions proposed in his "Motion to Life Qualify the Jury", he cites *Battenfield v. State*, 816 P.2d 555 (Okl.Cr.1991) as support. We find no such support. *Battenfield* addresses the issue of "the presumption of life", which this Court held was not error to fail to instruct on. We noted in that case that the appellant cited no relevant authority and that we were unable to locate any to support that particu-

lar assignment of error. We note the same to be true in this case with the issue of "life qualifying the jury". As we have consistently held, this Court will not address assignments unsupported by relevant citation of authority. *See Childers v. State*, 764 P.2d 900, 905 (Okl.Cr.1988).

■■■ Next, Appellant contends that the trial court erred in admitting first stage evidence in the second stage. This contention is without merit. In *Parks v. State*, 651 P.2d 686, 694 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983), this Court held that the first stage evidence may be received in the second stage. Such procedure was found to conform fully to the mandate of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), that the sentencer consider not only the defendant's record and character but also any circumstances of the offense.

■■■ In his tenth assignment of error, Appellant asserts that the trial court erred in overruling his motion to allow a separate jury to decide his punishment. We do not agree. To ask the trial court to empanel a separate jury would be in violation of our statutory mandate, which directs as follows:

> The proceeding shall be conducted by the trial judge before the *trial jury* as soon as practicable without presentence investigation. 21 O.S.1981, § 701.10 (Emphasis added.)

Next, Appellant claims that he was not provided timely notice of aggravating circumstances. A chronology of this case reveals that on February 28, 1991, the State filed its first "Notice of Evidence in Support of Aggravating Circumstances," listing four (4) aggravating circumstances. On May 23, 1991, the State filed an Amended Bill of Particulars, listing six (6) aggravating circumstances. On September 5, 1991, the State filed its "Notice of Witnesses for Punishment Stage and Precis of Evidence". Appellant's trial began on September 17, 1991.

Appellant cites *Hunter v. State*, 829 P.2d 64 (Okl.Cr.1992) as authority for his argument. In *Hunter*, where the State did not file its Bill of Particulars until seven (7) days before trial, this Court held the time to be unreasonable and adopted the standard that the State *must* file the Bill of Particulars prior to or at the arraignment of the defendant. In the instant case, the Bill of Particulars and the amended Bill of Particulars were filed approximately six (6) and four (4) months prior to trial. We deem such times to be reasonable.

■■■ In his twelfth assignment of error, Appellant submits that the trial court erred in instructing the jury on the aggravating circumstance regarding the murder being committed by a person serving a sentence of imprisonment on conviction of a felony. Appellant reasons that this aggravator was meant to be applicable only to protect those persons located within penal institutions. Further, that under the circumstances in this case where Appellant was out on pre-parole release, this aggravator duplicates the aggravating circumstance of continuing threat to society. We do not agree.

Each of the aggravating circumstances is supported by different evidence. The fact is that Appellant was released from prison under the Pre-parole Conditional Supervision Program. However, he was still under the supervision of the Department of Corrections for the previously committed felony and as such, still "serving a sentence of imprisonment on conviction of a felony." The aggravating circumstance of continuing threat to society was supported by, among other things, Appellant's prior conviction of three (3) counts of Assault and Battery with a Dangerous Weapon, thus rendering Appellant's seventeenth assignment of error meritless. *See Green v. State*, 713 P.2d 1032, 1040 (Okl.Cr.1985) and *Smith v. State*, 819 P.2d 270, 278 (Okl.Cr.1991).

■■■ In his thirteenth assignment of error, Appellant asks this Court to reverse his sentence of death because the trial court refused his requested "triggerman" instruction. Appellant relies on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), where the Supreme Court recognized that one who is convicted of first degree murder through the felony murder doctrine must be

accorded an "individualized consideration as a constitutional requirement in imposing the death sentence". The issue is "whether death is a valid penalty under the Eighth and Fourteenth Amendments for one who neither took life, attempted to take life, nor intended to take life."

It is noted that Appellant was charged in the alternative with malice aforethought murder and felony murder. The jury did not, and indeed is not required to, specify which alternative was the cause of the crime. *See James v. State*, 637 P.2d 862, 865 (Okl. Cr.1981). Appellant argues that it is necessary to specify which alternative the jury found in order to determine whether there has been an *Enmund* violation, that is, if the jury found Appellant guilty of felony murder and not murder aforethought, then *Enmund* and its progeny apply.

This Court was called to consider a similar argument in *Hatch v. State*, 662 P.2d 1377 (Okl.Cr.1983), where the defendant was found guilty of two counts of murder based on the felony murder rule. This Court vacated the sentences of death and remanded for resentencing not inconsistent with *Enmund*. However, this Court agreed with the Supreme Court's assessment that in Oklahoma, a vicarious felony murderer may be sentenced to death absent an intent to kill, if sufficient aggravating circumstances exist. This Court recognized that the aggravating circumstances must outweigh the mitigating circumstances as provided in 21 O.S.1981, § 701.11. "Certainly the degree of participation in the entire chain of events may be presented in mitigation of the degree of punishment to be imposed. It is not, however, an absolute or conclusive mitigating factor." *Hatch, supra*, Footnote 4, Page 1383.

We have considered this case in light of *Enmund* and find that any error in failure to give the "triggerman" instruction is harmless in light of the sufficient aggravating circumstances which outweigh the mitigating circumstances.

Next, Appellant asserts that there was insufficient evidence for the jury to find the aggravating circumstance of "especially heinous, atrocious, or cruel" as to the deaths of the victims, Timothy Sheets and Carol McDaniels. We do not agree. The evidence shows that both victims were shot in the head and left to languish. Victim Sheets was semi-conscious and vomiting on himself when the police arrived at the scene. Ms. McDaniels was still alive and able to tell the police her name when they found her.

The gist of Appellant's sixteenth assignment of error is two-fold. First, Appellant submits that the aggravating circumstance of "creating a risk to more than one person" was inappropriate in this case and not within the class of behavior contemplated by the legislature. He argues that the risk in this circumstance deals with the risk to those other than the victims. He points out that the circumstance is appropriate in those cases where, for example, there are use of explosives or the spraying of bullets in an effort to single out a particular target, i.e., the gravamen of the circumstance is not the number of persons killed, but the callous creation of the risk to more than one person.

Second, Appellant submits that this aggravating circumstance was duplicated by the aggravating circumstance that he killed to avoid arrest or prosecution, i.e., both circumstances are predicated on the same evidence—the killing of all four "victims/witnesses." Appellant offers no authority for either of his arguments. Nonetheless, these concerns were addressed in *Stafford v. State*, 669 P.2d 285, 299 (Okl.Cr.1983) where we found that the two aggravators may be found in a multiple murder case. In *Stafford*, as here, Appellant, immediately after having shot one victim, opened fire on the others. These facts support the aggravating circumstance that Appellant created a risk of death to more than one person. Likewise, the jury was justified in finding that the murders were committed to avoid or prevent lawful arrest or prosecution.

In his eighteenth assignment of error, Appellant contends that the trial court erred in refusing to advise the jury that a finding of mitigation need not be unanimous and that if a juror found mitigating evidence which persuaded him or her to vote for life, then Appellant could not receive the death

penalty. We do not view this "advice" to be a proper statement of the law. Appellant misreads *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), where the Supreme Court held that the finding of a mitigator need not be unanimous in order to be considered as such mitigator **for the purpose of weighing.** Oklahoma does not have a unanimity requirement for the consideration of mitigating circumstances and the instructions on mitigating and aggravating circumstances, when considered as a whole, properly guide the jury. *See Pickens v. State,* 850 P.2d 328, 339–340 (Okl.Cr.1993). This proposition is without merit.

■ In his nineteenth assignment of error, Appellant objects to the use of OUJI–CR 443 and its Verdict Form For Aggravating Circumstances. He states that it does not provide for designating the mitigating circumstances found by the jury, thus leaving the findings to speculation. Appellant points out that a "large number" of mitigating factors were submitted to the jury and instructed upon. He argues that the failure to delineate the factors found to be mitigating precludes a determination as to if and/or whether a proper weighing was made as required by OUJI–CR 440 and § 701.10.

The State responds that to mandate a specific listing of mitigators found would not only violate Article 7, § 15 of the Oklahoma Constitution because it would require the jury to "make findings of particular questions of fact, but would "fall afoul of" *McKoy, supra.* Appellant offers no authority for his position. The State's reliance on the above authority for its position is misplaced. First, the Constitutional provision relied on deals with **Verdicts.** Secondly, *McKoy* does not in any way address whether mitigating factors have to be listed specifically. It holds that the finding of a mitigator need not be unanimous in order to be considered as such mitigator for the purpose of weighing. Notwithstanding the aforesaid, this Court considered this argument in *Revilla v. State,* 877 P.2d 1143 (1994), and found it unpersuasive.

■ Next, Appellant asserts that the trial court committed reversible error by refusing to give his requested instruction directing the jury to consider sympathy arising from the mitigating evidence presented. The jury was given the following instruction:

> Mitigating circumstances are those which in **fairness** and **mercy,** may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. (Emphasis added.)

We believe the instruction as given specifically informed the jury that they could use mercy and fairness and is adequate. *See Fox v. State,* 779 P.2d 562 (Okl.Cr.1989). This Court has held that specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Rojem v. State,* 753 P.2d 359, 370 (Okl.Cr. 1988). This proposition is without merit.

■ In his twenty-first proposition of error, Appellant complains that the trial court erred in admitting into evidence State's exhibits 32 and 33. These exhibits were incident reports from the jail reflecting that homemade weapons had been confiscated from Appellant. The trial court found that these reports were "inadvertently" omitted from the records furnished to Appellant and thus, overruled his objections to their admittance. Other incident reports were introduced by Appellant to bolster his claim of racial fear as a reason for arming himself. Appellant claims that had he known of the incidents in exhibits 32 & 33, he would not have made the tactical decision to use the records he received, thereby opening the door to evidence of other crimes. Appellant contends that the use of these exhibits were in violation of *Allen* and in violation of 21 O.S.1981, § 701.10 which requires the State to make known prior to trial any evidence in aggravation.

The State takes the position that the exhibits were inadvertently omitted from the material provided to Appellant, and were merely cumulative to the other evidence which Appellant had already presented. Additionally, the State argues that the evidence was not of "sufficient significance" to deny Appellant a fair trial. We agree. In *Farmer v. State,* 565 P.2d 1068, 1073 (Okl.Cr.1977),

this Court held that a prosecutor does not violate his constitutional duty of disclosure unless his omission is of sufficient significance to result in a defendant's right to a fair trial.

Last, Appellant asserts that the trial court erred in its response to the jury's question regarding life without parole. At three hours into deliberations, the jury sent the following request by note:

Does Life without Parole mean exactly that? *He would never* under any circumstances, get out of prison?

The trial court responded:

I will instruct you again to look at your instructions. The law in Oklahoma provides a person convicted of Murder in the First Degree is punishable by death, by life without parole or life. You may retire and deliberate further.

Appellant had requested the following instruction No. 13, which was refused by the trial court:

YOU ARE INSTRUCTED THAT under Article 6, Section 10 of the Oklahoma Constitution, the Pardon and Parole Board is prohibited from making recommendations regarding parole for a person sentenced to life imprisonment without parole. Further, the Governor shall not have the power to grant parole if a person has been sentenced to life without parole.

Appellant notes there are no cases addressing the issue of failure of the trial court to instruct on the meaning of Life Without Parole. We believe that where the jury is presented with the sentencing options of life imprisonment and life without parole, the meaning of life without parole is self-explanatory. We find no error in the court's failure to instruct on the meaning of life without parole.

We have carefully and independently reviewed all the evidence, both mitigating and aggravating, in this case. The evidence supporting each of the six (6) aggravating factors is substantial. Additionally, we have considered the mitigating factors and conclude beyond a reasonable doubt that the jury justifiably sentenced Appellant to death.

## MANDATORY SENTENCE REVIEW

Finally, this Court is charged by the Legislature to determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; (2) whether the evidence supports the jury's finding of the statutory aggravating circumstances found; and (3) whether the sentences of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. 21 O.S.1981, § 701.13(C). We are satisfied that neither passion, prejudice or any other arbitrary factor is present in the record to undermine our confidence in the jury's verdict. Ample evidence supports the jury's finding of six (6) aggravating factors:

1. That Appellant had previously been convicted of a felony involving violence.

2. That Appellant had knowingly created a great risk of death to more than one person.

3. That the murders were committed while Appellant was serving a sentence on a felony conviction.

4. That Appellant was a continuing threat to society.

5. That the murders of Carol Ann McDaniels and Timothy Sheets were especially heinous, atrocious and cruel.

6. That the murders were committed for the purpose of preventing lawful arrest and prosecution.

Finally, upon review of capital cases, we find the sentences of death in this case are neither excessive nor disproportionate. *See Salazar v. State*, 852 P.2d 729 (Okl.Cr.1993); *Pickens v. State*, 850 P.2d 328 (Okl.Cr.1993); *Fox v. State*, 779 P.2d 562 (Okl.Cr.1989); *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983). Judgments and Sentences are **AFFIRMED.**

LUMPKIN, P.J., and LANE and STRUBHAR, JJ., concur.

CHAPEL, J., concurs in result.