1999 OK CR 19

**Theodore Raymond STILES, Jr., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–98–330.

Court of Criminal Appeals of Oklahoma.

April 28, 1999.

---

Orvan Jerry Hanson, Miami, Oklahoma, Attorney for Defendant at trial.

Douglas Pewitt, Assistant District Attorney, Ottawa County Courthouse, Miami, Oklahoma, Attorney for State, at trial.

S. Gail Gunning, Appellate Defense Counsel, Norman, Oklahoma, Attorney for Appellant, on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Katharine J. Hodgins, Assistant Attorney General, Oklahoma City, Oklahoma, on appeal.

## SUMMARY OPINION

CHAPEL, Judge:

¶1 Theodore Raymond Stiles, Jr., was tried by jury and convicted of Counts I and II, Sexual Abuse of a Child in violation of 10 O.S.Supp.1996, § 7115, in the District Court of Ottawa County, Case No. CF–97–177. In accordance with the jury's recommendation, the Honorable Sam C. Fullerton sentenced Stiles to twenty years imprisonment on each count. Stiles appeals these convictions and sentences.

¶2 Stiles raises four propositions of error in support of his appeal:

I. Stiles was denied his right to trial by a fair and impartial jury because extrinsic prejudicial evidence was present in the jury room during deliberations, was read aloud to all of the jurors, and contributed to his convictions;

II. Stiles was prejudiced by the trial court's improper admission of a videotape through which the State impeached the trial testimony of its witness S.S.;

III. Stiles was denied his right to testify in his own defense; and

IV. Defense counsel was ineffective in failing to obtain the services of an expert prior to trial.

¶3 After thorough consideration of the entire record · before us on appeal including the original record, transcripts, briefs and exhibits, we have determined that neither reversal nor modification are required under the law and evidence. In reaching our conclusion, we find in Proposition I that the improper information in Defendant's Exhibit I, present during jury deliberations, was harmless because it was almost wholly cumulative of evidence presented at trial and there was no reasonable possibility it contributed to the conviction.[1] We find in Proposition III that Stiles would have been subject to impeachment with his Arkansas felony conviction whether or not it was used to enhance his sentence, and thus was not denied the right to testify when the State dismissed the second charge after the jury's first-stage verdict of guilt. We find in Proposition IV that trial counsel was not ineffective for failing to secure the services of an expert before trial.[2]

¶4 We discuss the impeachment issue raised by Proposition II more fully. Although we find error in the prosecution's method of impeaching witness S.S., that error did not affect the outcome of the trial and does not require relief. When first called, S.S. refused to say Stiles committed any improper actions against her. Her testimony was clear that she'd told other people Stiles did something, but she wasn't going to tell those strangers in the courtroom anything. The State recalled S.S. and, while she was on the stand, showed her videotaped interview with James Marks during which she said Stiles touched her inappropriately. After seeing the videotape, S.S. agreed she told Marks the truth on tape and stated she

1. *Cunningham v. State,* 1987 OK CR 280, 748 P.2d 520, 522. In reaching our decision, we do not consider affidavits describing the subjective effect this information had on the deliberation process. 12 O.S.1991, § 2606(B); *Richie v. State,* 1998 OK CR 26, 957 P.2d 1192, 1197–98; *Hall v. State,* 1988 OK CR 174, 762 P.2d 264, 266–67; *Weatherly v. State,* 1987 OK CR 28, 733 P.2d 1331, 1334–35. In connection with this proposition, Stiles's October 1, 1998 Motion to Supplement the Record is **GRANTED.**

2. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

really had "told you guys" (testified in court) that Stiles did things to her. The jury saw the videotape, but it was not admitted in evidence. The trial court admonished the jury the tape was being played only to show S.S. had made prior inconsistent statements and should be considered for impeachment only.

■ ¶ 5 Stiles primarily argues the tape was inadmissible to impeach S.S. with prior inconsistent testimony.[3] On direct examination S.S. refused to say Stiles had done anything to her; the closest she would say was that she didn't know what he'd done because she was asleep that night. During the State's case-in-chief, the State called DHS Investigator Marks to authenticate the videotape of his May 1997 interview with S.S., then recalled S.S. After S.S. testified she remembered that interview and told the truth in it, the State played the fifty-minute tape in open court. S.S. then agreed she'd told Marks her father "growed on" [had sex with] and got on top of her. Stiles objected to the videotape and requested the trial court

view it in camera before playing it in its entirety. This was denied.

■ ¶ 6 The State may of course impeach its own witness.[4] However, the State must follow the law regarding impeachment evidence. A witness subject to cross-examination must testify and be given a chance to explain or deny any discrepancy between that testimony and previous statements before evidence of the previous statement is admissible.[5] At that point the witness may be impeached with the specific inconsistent portions of her statement.[6]

¶ 7 S.S. never denied telling Marks that Stiles did "nasty things" to her. She admitted (before the tape was played) that she told Marks the truth and said she told Marks and the prosecutor what she told her mother. She simply would not repeat at trial what she told Marks and said she was asleep or could not remember.[7] While both parties asked S.S. whether she remembered talking to Marks and whether she told him the truth, neither the prosecutor nor defense counsel asked her specific questions about her previ-

3. Stiles first claims he was prejudiced because the State failed to give proper notice they would use the tape. This claim must fail because it rests on the assumption that the tape was admitted under 12 O.S.Supp.1993, § 2803.1 as a statement by an underage child describing sexual contact. The State (apparently recognizing the notice problem as to S.S.) explicitly withdrew its request to admit the tape under § 2803.1 and offered it instead as a previous inconsistent statement to impeach her trial testimony. Whether Stiles received proper notice under § 2803.1 is irrelevant. Stiles also claims the tape was otherwise inadmissible. Neither party addresses this issue, and it was not raised at the trial court, but we note S.S.'s taped statements may have been admissible under 12 O.S.1991, § 2804(A)(3). That exception to the hearsay rule applies when an otherwise available witness testifies to a lack of memory of the subject matter regarding his statement. Given our conclusion, we find it unnecessary to decide whether the videotape was admissible under this section. Whether or not the tape was admissible as an exception to the hearsay rule does not change the outcome.

4. 12 O.S.1991, § 2607; *Omalza v. State*, 1995 OK CR 80, 911 P.2d 286, 299.

5. *Omalza*, 911 P.2d at 300–301 (witnesses testified; offered chance to explain discrepancies before inconsistent statements introduced); *United States v. Owens*, 484 U.S. 554, 564, 108 S.Ct.

838, 845, 98 L.Ed.2d 951 (1988) (witness admitted memory loss before inconsistent statement introduced); 12 O.S.1991, § 2613. There is no Oklahoma case directly addressing the issue of a videotape played in its entirety but not admitted into evidence. Both parties direct the Court to cases involving videotapes. *McCracken v. State*, 1994 OK CR 68, 887 P.2d 323, 328, determined that any error in failure to admit a videotape of a co-defendant containing prior inconsistent statements was harmless as the tape would not have changed the outcome of the trial. *Utt v. State*, 1979 OK CR 37, 595 P.2d 448, 450, held admission of the entire videotape containing accomplice's prior consistent statements was proper where the defense had admitted portions of the tape as inconsistent. Transcripts of the videotape were available in both *McCracken* and *Utt*, but were not available to Stiles's jury.

6. "When contradictory statements made by a witness are admissible in evidence for the purpose of impeaching him, they must be confined to contradictions of the testimony of the witness which are injurious to the party seeking to impeach him. . . ." *Weaver v. State*, 1968 OK CR 180, 446 P.2d 64, 68, quoting *Gillaspy v. State*, 96 Okl.Cr. 347, 255 P.2d 302, 307 (1953).

7. Early in direct examination, S.S. agreed there was something she wasn't telling the prosecutor because she was scared and didn't want to tell people.

ous inconsistent statements to Marks. Before playing the tape, the prosecutor asked S.S. if she remembered that interview and said: "[S]ome of the things you said to Jim don't match up with what you told the jury. I want you to watch a videotape. And I'd like you to explain the differences for me. Can you do that?" The prosecutor justified playing the tape in open court by saying it was a method taught in prosecutorial seminars intended to impeach a child witness who recanted.

¶ 8   Even assuming S.S. recanted her statements that Stiles touched her inappropriately,[8] playing the entire unedited tape is not an appropriate impeachment procedure. The tape was very long and contained information irrelevant to impeachment by prior inconsistent statements. In any case, the tape should not have been played before offering S.S. a chance to specifically explain or deny the particular statements in question. The proper procedure would have been to ask whether she remembered making particular statements to Marks, getting her response, asking her whether that was correct, and then impeaching, if necessary, with the portion of the tape containing those statements.

¶ 9   Although use of the tape for impeachment was error, it does not warrant relief in this case. Had S.S. failed to testify at all, the State still had sufficient proof of this offense. A.S. testified in detail as to Stiles's actions and stated she was right there when he did the same thing to her sister, S.S. A kindergarten counselor testified that, while listening to a story about inappropriate touching, S.S. jumped up and said her daddy did the same thing to her and she couldn't make him stop. Marks testified extensively regarding what S.S. told him in two interviews. Under these circumstances admission of the tape was harmless. This proposition is denied.

8.  When asked directly if anyone in the courtroom had touched her "thing," she shook her head and finally said "I don't even know because I was asleep that night." When asked if she ever told her mother someone did something nasty to her, S.S. nodded her head and said her mother said she can't see him (in context, clearly Stiles) anymore. On redirect S.S. (a) said she didn't tell her mother anything, (b) agreed she told her something and can't see Stiles anymore, and (c) said her mother didn't do anything after she told her. Finally, S.S. said she would tell the jury what she told her mother and Marks, but shook her heard and repeated "no" when asked whether anyone touched her "thing".

## DECISION

¶ 10   The judgments and sentences of the district court are **AFFIRMED.**

STRUBHAR, P.J., and JOHNSON, J., concur.

LUMPKIN, V.P.J., and LILE, J., concur in results.

LILE, J.: Concurs in Results:

¶ 1   I disagree that 12 O.S.1991, § 2613, requires that any formalistic sequence be followed in impeaching the witness; it is not necessary that the witness be asked to explain or deny any discrepancy before the previous statement is admissible. The only requirement is that the witness be afforded an opportunity to explain or deny and be subject to interrogation by the opposite party at some time while the witness is on the stand. I agree that as impeachment evidence the entire tape was not relevant, and only relevant portions should have been used before the jury.

¶ 2   I agree with J. Lumpkin that this is properly considered as a question of past recollection recorded under 12 O.S.1991, § 2803(5).

¶ 3   If admissible under this section, then we can rely on that theory without regard to the reasons given by the prosecution at trial or relied upon by the judge at trial. *See Welch v. State,* 1998 OK CR 54, ¶¶ 5–8, 968 P.2d 1231, 1239–40.

LUMPKIN, Vice–Presiding Judge: Concurs in Results:

¶ 1   I agree the provisions of 12 O.S.1991, § 2613 were not followed in the presentation of the evidence in question. *See 3 Whinery, Oklahoma Evidence, Commentary on the Law of Evidence,* §§ 47.27 & 47.28. Howev-

**960**

er, I find the error was in styling the State's methodology of seeking to admit the prior statement as impeachment.

¶2 The witness was, in effect, unavailable due to her refusal to testify and statements of lack of memory regarding the acts committed by Appellant. It appears from the record she was hesitant to testify to those acts in the open courtroom with the participants and audience present. This type of testimony implicates the provisions of 12 O.S. 1991, § 2804(A)(2)(3). However, the previous statement of the witness was not taken in a hearing, proceeding or deposition which would satisfy the requirements of Section 2804(B).

¶3 The best analysis of the attempt to use evidence of this type is through 12 O.S. 1991, § 2803(5), the hearsay exception for a past recollection recorded. *2 Whinery, Oklahoma Evidence, Commentary on the Law of Evidence*, § 36.17. The State was not seeking to impeach the witness's loss of memory. It was seeking to have the statement admitted as substantive evidence. If admitted under Section 2803(5), the statement can be used by the trier of fact as substantive evidence of guilt. However, if admitted under Section 2613, it may only be used to impeach the statement of the witness that she did not remember or was asleep. If this issue had been presented as a question of whether a video record of the statement was admissible pursuant to Section 2803(5), it would have raised a question of first impression for the Court. However, the State gained the admission of the statement as impeachment evidence pursuant to Section 2613 and that is the basis upon which the Court must decide the issue on appeal.

¶4 I concur in the results reached by the Court through the above analysis and agree the judgment and sentence should be affirmed.